UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
IN DEFENSE OF ANIMALS, *et al.*,    )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )     Civil Action No. 09-2222 (PLF)
                                    )
KEN SALAZAR, *et al.*,              )
                                    )
            Defendants.             )
_____)

OPINION

    This matter is before the Court on four separate cross-motions for summary judgment filed, respectively, by (1) plaintiffs In Defense of Animals, Craig C. Downer, and Terri Farley; (2) defendants Ken Salazar, the Secretary of the United States Department of the Interior, and various employees of the Interior Department's Bureau of Land Managment ("BLM"); (3) defendant-intervenor Safari Club International; and (4) defendant-intervenor the Department of Wildlife of the state of Nevada. The Court heard oral argument on the motions on May 6, 2010.

    After carefully considering the arguments presented by counsel both at oral argument and in the parties' memoranda, the relevant legal authorities, the administrative record, and the record in this case as a whole, the Court concludes that two of the claims brought by the plaintiffs are moot, and that the plaintiffs lack standing to pursue their other claims.[1] The Court

---

[1] The documents reviewed by the Court include the following: plaintiffs' first amended complaint ("1st Am. Compl."); plaintiffs' second amended complaint ("2d Am. Compl."); the administrative record ("A.R."); plaintiffs' motion for summary judgment ("PMSJ"); plaintiffs' motion for injunctive relief, Ex. 1 ("Downer Affid."); the federal

therefore will deny all four pending motions for summary judgment and dismiss the plaintiffs' second amended complaint.

I. BACKGROUND

As more fully described in the Court's Opinion denying the plaintiffs' motion for a preliminary injunction, this action concerns the decision of the Bureau of Land Management ("BLM") to remove between two- and three-thousand wild horses from the Calico Mountains Complex ("the Complex"), a 550,000-acre expanse of land located in Nevada's Humboldt and Washoe counties. See In Defense of Animals v. Salazar, 675 F. Supp. 2d 89, 91-92 (D.D.C. 2009). Under the Wild Free-Roaming Horses and Burros Act, 16 U.S.C. § 1331 *et seq.* ("Wild Horse Act"), BLM is tasked with "protect[ing] and manag[ing] wild free-roaming horses and burros as components of the public lands . . . in a manner that is designed to achieve and maintain a thriving natural ecological balance on the public lands." 16 U.S.C. § 1333(a). As part of that obligation, BLM is required by statute to "determine appropriate management levels of wild free-roaming horses and burros . . . and determine whether appropriate management levels should be achieved by the removal or destruction of excess animals, or other options (such as sterilization, or natural controls on population levels)." Id. § 1333(b)(1). "Where [BLM]

---

defendants' cross-motion for summary judgment; the cross-motion for summary judgment filed by Nevada's Department of Wildlife; Safari Club International's cross-motion for summary judgment; the plaintiffs' opposition to the cross-motions/reply to the defendants' opposition to the plaintiffs' motion for summary judgment ("P. Opp."); the replies of the federal defendants and the defendant-intervenors to the plaintiffs' motion for summary judgment; plaintiffs' reply to defendants' opposition to the plaintiffs' motion for injunctive relief, Ex. 1 (Supplemental Affidavit of Craig Downer) ("Supp. Downer Affid."); plaintiffs' reply to defendants' opposition to plaintiffs' motion for injunctive relief, Ex. 2 ("Farley Affid."); P. Opp., Ex. 2 ("Downer Decl."); P. Opp., Ex. 3 ("Farley Decl."); and the transcript of oral argument (May 6, 2010) ("Tr.").

determines . . . that an overpopulation [of wild horses or burros] exists on a given area of the public lands and that action is necessary to remove excess animals, [it] shall immediately remove excess animals from the range so as to achieve appropriate management levels." Id. § 1333(b)(2).

In 2009, estimating that the number of horses in the Calico Mountains Complex exceeded the designated appropriate management level by over 2,000 horses, BLM developed a plan to round up or "gather" "excess" horses from the Complex and place them in temporary holding corrals. A.R. at 7016. Once placed in short-term holding facilities or temporary corrals located within or just outside the Complex, individual horses would be "inspected by facility staff and on-site contract [v]eterinarians to observe health and ensure the animals ha[d] been cared for humanely." Id. at 7017. Animals in poor physical condition might be euthanized. Id. Remaining excess horses "would be transported to BLM facilities for adoption, sale, or long-term holding." Id. Such long-term holding facilities are located in Kansas, Oklahoma, and South Dakota. In Defense of Animals v. Salazar, 675 F. Supp. 2d at 92. Pursuant to BLM's gather plan, if BLM gathered too many horses — more than the number that needed to be removed in order to reach an appropriate management level — non-excess horses would be released back to the range. A.R. at 7018.

The plaintiffs filed this lawsuit in December of 2009, seeking a preliminary injunction that would prevent the occurrence of the proposed roundup. Plaintiffs asserted that the method of gathering, sorting, and removing excess horses proposed by BLM violated the Wild Horse Act and should be enjoined under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. See 1st Am. Compl. ¶¶ 45-48, 55-58. They also contended that placing healthy,

3

unadopted horses in long-term holding facilities for indefinite periods of time was not permitted under the terms of the Wild Horse Act. Id. ¶¶ 49-54.

In an Opinion issued on December 23, 2009, the Court denied the plaintiffs' motion for a preliminary injunction, allowing the proposed roundup of excess horses to move forward. It concluded that the plaintiffs were not likely to succeed on their claims that the method of gathering the horses proposed by BLM was contrary to the Wild Horse Act and so concluded that the gather should not be prevented. In Defense of Animals v. Salazar, 675 F. Supp. 2d at 95-98. At the same time, the Court suggested that the plaintiffs might prevail on their claim that long-term holding of excess horses was not authorized by the Wild Horse Act, which appears to provide only two means of dealing with unadopted, healthy excess horses: euthanization and sale, possibly for slaughter. Id. at 99-102. The Court nevertheless denied the plaintiffs' motion for a preliminary injunction related to that claim because it concluded that the plaintiffs had failed to establish that they would suffer an imminent and tangible irreparable injury in the absence of an injunction. Id. at 102-03.

After the Court denied the plaintiffs' motion for a preliminary injunction, the Court allowed Safari Club International and Nevada's Department of Wildlife to intervene as defendants. Also after the Court's initial ruling, the plaintiffs amended their complaint to add a claim under the National Environmental Policy Act, 42 U.S.C. §§ 4231 *et seq.* ("NEPA"). See 2d Am. Compl. ¶¶ 74-77. They contended that the Environmental Assessment prepared by BLM in anticipation of the gather of horses from the Complex had unlawfully failed to consider the impact of long-term holding on the removed horses themselves. Id. ¶ 75.

BLM conducted the proposed gather of horses from the Complex between December 28, 2009 and February 5, 2010. PMSJ at 1; DMSJ at 10. Approximately 2,000 wild horses were herded together and placed in a temporary holding facility in Fallon, Nevada, where they will remain at least until May 26, 2010, after which they may be relocated to long-term holding facilities in the Midwest. PMSJ at 1, 9 n.7.

II. DISCUSSION

The current iterations of the plaintiffs' claims fall into two categories: those claims that challenge the legality of the means by which the gather of horses from the Complex was conducted, see 2d Am. Compl. ¶¶ 60-63, 70-73, and those asserting that the relocation of excess horses to long-term holding facilities in Kansas, Oklahoma, and South Dakota violates the Wild Horse Act and/or was insufficiently considered by the agency in violation of NEPA. See id. ¶¶ 64-69, 74-77. Because the gather in question has already occurred, the first category of claims is now moot and thus is not justiciable. Because the plaintiffs have failed to establish a causal link between their asserted injury and BLM's use of long-term holding facilities, they lack standing to bring the second set of claims.

*A. Claims Challenging the Gather*

"It is a basic constitutional requirement that a dispute before a federal court be 'an actual controversy . . . extant at all stages of review, [and] not merely at the time the complaint is filed.'" Newdow v. Roberts, No. 09-5126, slip. op. at 9 (D.C. Cir. May 7, 2010) (quoting Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974)) (alterations in original). "'[W]hen the issues presented [in a case] are no longer 'live' or the parties lack a legally cognizable interest in the

outcome,'" the case is moot and hence nonjusticiable. Ramirez v. U.S Customs & Border Protection, Civil Action. No. 07-65, 2010 WL 1783265, at *8 (D.D.C. May 5, 2010) (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980)). In the same vein, "[i]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." McBryde v. Comm. to Review Council Conduct, 264 F.3d 52, 55 (D.C. Cir. 2001).

In this case, the gather that the plaintiffs challenge as unlawful has already taken place, and so it would seem that "[i]t is impossible for the court to grant any effectual relief whatever" with regard to it. Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 22 (D.C. Cir. 2006) (ruling that challenges to already completed gathers were moot) (internal quotation marks and citations omitted). The plaintiffs, however, argue that their claims fall within the exception to the mootness doctrine for actions "capable of repetition, yet evading review." P. Opp. at 17-20.

That exception is not available to the plaintiffs here. Plaintiffs had the opportunity to pursue further review of the legality of the proposed gather by appealing this Court's decision denying their motion for a preliminary injunction. "Had plaintiffs pursued an appeal of that denial and had the preliminary injunction been granted, their case would not have become moot." Newdow v. Roberts, No. 09-5126, slip op. at 9. Having failed to take advantage of the opportunity for appeal, however, the plaintiffs are now barred from claiming the "capable of repetition, yet evading review" exception: "The capable-of-repetition doctrine is not meant to save mooted cases that may have remained live but for the neglect of the plaintiff." Id. at 10.

Consequently, those counts of plaintiffs' complaint that challenge the manner of conducting the Calico Mountains Complex gather must be dismissed.[2]

### B. Claims Challenging Relocation and Long-Term Holding

The plaintiffs' two remaining claims assert that (1) BLM's plans to relocate horses removed from the Calico Mountains Complex to long-term holding facilities in the Midwest is not authorized by the Wild Horse Act, see 2d Am. Compl. ¶¶ 64-69, and (2) the agency violated NEPA by failing to consider the effects of long-term holding on the horses removed from the Complex. Id. ¶¶ 74-77. With respect to both claims, the plaintiffs seek a declaratory judgment. They also seek an injunction that would bar BLM from transporting the removed horses from their current location in short-term holding facilities in Nevada to long-term holding facilities in the Midwest. See id. ¶ E.

In its Opinion denying the plaintiffs' motion for a preliminary injunction, the Court indicated that the plaintiffs had shown a likelihood of success on the merits as to their claim that the relocation and long-term holding of excess horses was not permitted under the Wild Horse Act. See In Defense of Animals v. Salazar, 675 F. Supp. 2d at 99-102. At that point in the litigation, however, the parties had not discussed in any depth, and so the Court did not analyze, the adequacy of the plaintiffs' standing to bring those claims. See id. at 103 n.9 (explaining why standing would not be addressed). Now that the issue has been briefed and

---

[2] Furthermore, because decisions with respect to future removals and relocations of wild horses will be "highly fact-specific," and the manner in which particular herds will be managed in the future "is anyone's guess," plaintiffs' claims regarding the gather in this case do not raise issues that are capable of repetition, yet evading review. Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d at 22-23.

considered more fully, the Court concludes that the plaintiffs lack standing to bring their claims challenging long-term holding because the plaintiffs' asserted injuries are not sufficiently connected or "traceable" to the agency action in question.

Federal courts are courts of limited jurisdiction, with the ability to hear only cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress. See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005); Hunter v. District of Columbia, 384 F. Supp. 2d 257, 259 (D.D.C. 2005). A federal court has no subject matter jurisdiction where the plaintiffs lack standing. See Worth v. Jackson, 451 F.3d 854, 857-58 (D.C. Cir. 2006). In order to establish standing under Article III of the United States Constitution, a plaintiff must show, at an "irreducible constitutional minimum," that (1) it has suffered a concrete injury in fact — the invasion of a legally protected interest; (2) the injury is fairly traceable to the challenged action of the defendants (a causal connection); and (3) a favorable decision on the merits likely will redress the injury. Sprint Commc'ns Co., L.P. v. APPC Servs., Inc., 128 S. Ct. 2531, 2535 (2008) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); In re Navy Chaplaincy, 534 F.3d 756, 759-60 (D.C. Cir. 2008).

For claims alleging a "procedural injury" — such as NEPA claims — "the normal standards for redressability and immediacy" are somewhat relaxed. See Lujan v. Defenders of Wildlife, 504 U.S. at 572 n.7. Nevertheless, "the omission of a procedural requirement does not, by itself, give a party standing to sue." Center for Biological Diversity v. U.S. Dep't of the Interior, 563 F.3d 466, 479 (D.C. Cir. 2009) (internal quotation marks and citation omitted). There still must be a causal connection between the injury alleged and the defendants' conduct. A would-be plaintiff must "show not only that the defendant's acts omitted some procedural

8

requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest." Id.; see also Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n, 509 F.3d 562, 567 (D.C. Cir. 2007); Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 669 (D.C. Cir. 1996) ("[t]o prove causation, a [NEPA] plaintiff . . . must demonstrate that the particularized injury that the plaintiff is suffering or is likely to suffer is fairly traceable to the agency action that implicated the need for" an environmental impact statement).

Plaintiffs Terri Farley and Craig C. Downer claim that they have been injured by the removal of a large number of horses from the Calico Mountains Complex. See, e.g., Farley Affid. ¶¶ 7-8; Supp. Downer Affid. ¶¶ 2-3.[3] They maintain that they intend to visit the Complex in the future to view the wild horses in the animals' natural habitat, both for personal enjoyment and to further their professional interests in wild horses, and they contend that those interests will be impaired by the greatly reduced size of the herds in the Complex resulting from the gather of excess horses. See Farley Affid. ¶¶ 7-8; Farley Decl. ¶¶ 27, 32; Downer Decl. ¶¶ 53-56.[4] For present purposes, the Court assumes, without deciding, that plaintiffs' rather conclusory

---

[3] Regarding the standing of In Defense of Animals to bring this case, the plaintiffs have made only conclusory suggestions to the effect that In Defense of Animals' "constituents . . . are interested in and affected by the BLM activities at the Calico Mountain Complex." PMSJ at 4-5. Such vague and unsupported assertions cannot establish representational standing, see, e.g., Int'l Bhd. of Teamsters v. Transp. Security Admin., 429 F.3d 1130, 1134-35 (D.C. Cir. 2005), and the plaintiffs have not argued that In Defense of Animals has organizational standing. Consequently, the Court has subject matter jurisdiction over this dispute only if one of the individual plaintiffs, Mr. Downer or Ms. Farley, has standing to raise the plaintiffs' claims.

[4] As in its prior Opinion in this case, the Court uses the terms "remove" and "removal" to refer to the *permanent* separation of horses from their native range. See In Defense of Animals v. Salazar, 675 F. Supp. 2d at 97 & n.5. A horse is "removed" once BLM has gathered it (herded it from the range and into a temporary corral) and determined that it is an

allegations suffice to establish a concrete and particularized injury resulting from BLM's separation of so many horses from the Complex. Compare Center for Biological Diversity v. U.S. Dep't of the Interior, 563 F.3d at 479 (finding a cognizable interest based on affidavits much more specific, detailed, and precise than those in this case). The plaintiffs nevertheless have failed to satisfy standing's causation requirement. Their asserted injury results from the removal of wild horses from the Complex, not from the placement of removed horses in long-term holding facilities.

"[S]tanding is assessed as of the time a suit commences," Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 324 (D.C. Cir. 2009), and "is determined on a claim-by-claim basis." North Carolina Fisheries Ass'n, Inc. v. Gutierrez, 518 F. Supp. 2d 62, 82 (D.D.C. 2007) (citing DaimlerChrysler v. Cuno, 547 U.S. 332, 351-52 (2006)). At the commencement of this litigation, the direct threat to the plaintiffs' interest was BLM's decision that more than 2,000 horses in the Calico Mountains Complex were in excess of the appropriate management level for that range and had to be removed from the area. See 16 U.S.C. § 1333(b)(2) (requiring BLM to "remove excess animals from the range" "immediately" once it determines "that an overpopulation exists" there and "that action is necessary to remove excess animals"); A.R. at 7009 ("BLM has determined that 2,468 excess wild horses are present within the Complex and need to be removed."). The plaintiffs, as explained above, brought two categories of claims challenging BLM's plan for removal and disposition of excess horses: one set that contested the legality of the roundup process by which horses would be physically transported from the Complex, and one set that denied BLM's authority to place gathered excess

---

"excess" horse that cannot be returned to the range. See id.

horses in long-term holding facilities. The causal connection between the *roundup* and the plaintiffs' asserted injuries is clear: the roundup effected the separation of excess horses from the range, thus reducing the size of the Complex's herds in the manner complained of by the plaintiffs. In contrast, the causal relationship between *long-term holding* and the removal of many horses from the range has not been established; the plaintiffs have not shown that the removal of excess horses from the Complex was or is "fairly traceable" to the agency's plan to place some horses in long-term holding facilities in the Midwest.

Although both the plaintiffs' motion for summary judgment and their opposition to the defendants' cross-motion address the issue of standing at some length, see PMSJ at 4-7; P. Opp. at 16-20, neither document elucidates the necessary causal nexus between long-term holding and the plaintiffs' asserted injury. The closest the plaintiffs come to such an explanation is their assertion that "transfer to the long-term holding facilities in the Midwest would permanently remove the gathered Calico wild horses from their home on the range." P. Opp. at 16. This statement, however, ignores the undisputed fact that BLM's determination that a certain number of gathered horses are "excess" results in the permanent separation of those horses from the range. As plaintiffs' counsel conceded at oral argument, see Tr. at 14-15, horses cannot be returned to the range once they have been gathered and deemed "excess." See also In Defense of Animals v. Salazar, 675 F. Supp. 2d at 103 (suggesting that the Wild Horse Act does not appear to give BLM authority to release excess horses back onto the range from which they came). The subsequent placement of the removed horses in long-term holding facilities does not affect that result.

Perhaps the plaintiffs mean to suggest that if BLM were not permitted to place the horses in long-term holding facilities, the agency would not enact its gather plan and so would not remove excess horses from the Complex at all. Even assuming such a theory could support a finding of causation sufficient to confer standing, the plaintiffs have failed to point to any evidence in the record that would lift that theory out of the realm of speculation. If BLM were unable to place horses in long-term holding facilities, there is no reason to believe that it would cease its efforts to remove excess horses from the public lands in general, as the Wild Horse Act specifically instructs it to do, or from the Calico Mountains Complex in particular. If prevented from resorting to long-term holding, the agency might simply redouble its efforts to effect the adoption of excess horses. It might, as the plaintiffs suggested at oral argument, place excess horses into areas of the public lands that are not currently overpopulated by wild horses. Tr. at 12-13.[5] Or it might, as Congress has directed it to do, decide to euthanize healthy, unadoptable horses, assuming that it could secure funding to do so. See In Defense of Animals v. Salazar, 675 F. Supp. 2d at 96, 99-102. The plaintiffs can only speculate that the agency simply might cease its efforts to remove excess horses — and such speculation unsupported by evidence does not support a finding of standing. See, e.g., Center for Law & Educ. v. Dep't of Educ., 396 F.3d

---

[5] Indeed, at oral argument the plaintiffs actively encouraged the Court to order the agency to release excess Calico horses into areas of the public lands that have been inhabited by wild horses in the past but are not currently overpopulated by them. See Tr. at 14-15. But such a measure is unconnected to the plaintiffs' asserted injuries, all of which relate to the removal of the horses from a specific place — the Calico Mountains Complex — and not to their removal from public lands in general. See, e.g., PMSJ at 6-7 (explaining the plaintiffs' interest in and connections to the Calico Mountains Complex and the horses there). This mismatch between asserted injury and requested remedy is perhaps at least partially explained by the fact that the remedy was first requested at oral argument, not in the complaint or any of the plaintiffs' motion papers. See, e.g., Tr. at 12-13, 30.

1152, 1159 (D.C. Cir. 2005) ("Unadorned speculation will not suffice to invoke the judicial power." (citation and internal quotation marks omitted)); Huddy v. FCC, 236 F.3d 720, 723 (D.C. Cir. 2001) (argument that challenged action "just might" lead to alleged injury insufficient to establish standing).

The plaintiffs have thus failed to establish the existence of causation, a necessary ingredient of constitutional standing, with regard to either of their claims challenging long-term holding. As a substantive matter, the plaintiffs have not shown that there exists a causal link between long-term holding, whether or not authorized by the Wild Horse Act, and their asserted injury: the removal of excess horses from the Calico Mountains Complex. As for the claimed procedural injury under NEPA, "[t]he chain of causation between the alleged procedural violation and the concrete interest is speculative at best." Center for Law & Educ. v. Dep't of Educ., 396 F.3d at 1159. The plaintiffs have failed to demonstrate that it is "substantially probable" that BLM's allegedly unlawful failure to consider the effects of long-term holding on horses has caused or "will cause the essential injury to the plaintiff's own interest." Center for Biological Diversity v. U.S. Dep't of the Interior, 563 F.3d at 479 (internal quotation marks and citation omitted).

III.  CONCLUSION

For the foregoing reasons, the Court lacks subject matter jurisdiction over the plaintiffs' claims, and this litigation cannot go forward.  Because this Opinion disposes of the plaintiffs' claims but does not adjudicate them on their merits, the plaintiffs' complaint must be dismissed, and the pending cross-motions for summary judgment will be denied.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: May 24, 2010